BREVOORT (HILLIARD v.). See Case No. 6,505.

## Case No. 1,848.

### BREWER v. CALDWELL et al.

[13 Blatchf. 361.][1]

Circuit Court, S. D. New York. May 27, 1876.

EVIDENCE—TESTIMONY IN OTHER SUIT—ADMISSIBILITY.

B. brought a suit in equity in this court against C. and others, and in it took the deposition of one I., as a witness. B. then discontinued the suit, and afterwards brought another suit in equity against the same defendants, in this court, for the same cause of action. No proofs were taken in it by either party, and, after it had been set down for hearing, by the consent of both parties, the defendants applied for an order to permit them to read, as testimony, the deposition of I., so taken in the former suit. It was not shown that I. was dead, or that there was anything to prevent his being examined in the usual way: *Held*, that the application must be refused.

[Cited in The John H. Starin, Case No. 7,-351.]

[In equity. Bill by Henry O. Brewer against Samuel B. Caldwell and others. Defendants' motion to permit the reading of a deposition denied.]

Aaron P. Whitehead, for plaintiff.

William D. Shipman, for defendants.

JOHNSON, Circuit Judge. The plaintiff had another suit for the same cause of action for which the present suit is brought, and against the same defendants, in which the defendants examined as a witness one Ingersoll. The former suit was discontinued by the plaintiff, and soon after the present suit was commenced. The time to take proofs expired on the first Monday of April, 1875, and no proofs were taken by either party. After the cause was noticed and had been set down for hearing, by consent of both sides, at the February equity term, this motion for an order to permit the defendants to read the deposition of Ingersoll upon the hearing was made. The witness appears to be living, and nothing appears which prevented his being examined in the usual way. The claim to read his deposition taken in the former cause is made upon the idea that there is some peculiar rule of law which permits secondary evidence of this sort to be used in equity proceedings. In several of the cases commonly referred to as sustaining this view, the discussion has been as to the circumstances which would warrant the use of the depositions as secondary evidence, assuming that the case was such as made proper secondary evidence admissible. Thus, in Backhouse v. Middleton, 1 Cas. Ch. 173, there was a motion for leave to use depositions taken in a suit which had been dismissed, and some distinctions upon that subject were stated and discussed by the court; but, as a basis for it all, it appeared that the witness was dead. So, also, in City of London v. Perkins, 3 Brown, Parl. Cas. (Tomlin's Ed.) 602, which is cited in 1 Daniell, Ch. Pr. 870, as authority for the position that it need not appear that the witnesses were dead, it nevertheless did distinctly appear that all of them were dead; and the reversal in the house of lords seems to have proceeded upon the ground that the court of exchequer had disregarded the substantial proof on that point. The subject was discussed in Blagrave v. Blagrave, 1 De Gex & S. 252, and the leading authori-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

lay, for a length of time, without orders for her final destination. So that the matter is left in doubt and uncertainty. The captain is not answerable for plunder on capture, or as a recaptor, for losses, arising from the malfeazance of others.[4] His quality and responsibility, after the capture and recapture, were entirely changed. He is amenable for any misconduct of his own, but nothing of this kind is alleged. On the contrary, his character, for integrity, care, and attention, stands very high, and is in proof, in the testimony of Mr. May. Fraud and embezzlement must be clearly proved, and fixed on a party, before I can make him answerable. Nor can the captain be called on now for contribution, as he could have been in his former capacity, when, as master of the ship, he was answerable for the embezzlements of his crew. In that case, the fact, as to the crew, would require more pointed proof, than appears in this cause.

There was an allowance claimed for freight, by Mr. Dutilh's, or Mr. Gourjon's, counsel, but it must be clearly seen, that the freight was lost by the capture: this is, therefore out of the question. If there is any loss of freight, or other misfortune, on account of the failure of the voyage, it is not chargeable to the recaptors. Reimbursement must be sought elsewhere. It is charged, in one of the exhibits, to the underwriters. Had it been saved to the owners, I should have allowed salvage on it, but as it was lost, I have no decision to give on the subject. It only relates to the equity of this case, to state, that the respondents have amply covered the amount of all losses on this ship, and cargo. If they had not, I should deem the claim equally legal and relevant:

| | |
|---|---:|
| Mr. Dutilh's ship, sold at Charleston, for five thousand and fifty dollars | $ 5050 |
| His part of the cargo, for seven thousand and fifty-one dollars... | 7051 |
| Mr. Gourjon's (I take this sum, as there is some dispute about the difference between this, and 6770 dollars per M. C. May's account), six thousand four hundred and eleven dollars, and ninety cents....... | 6411 90 |
| | $18512 90 |

Total, eighteen thousand five hundred and twelve dollars, and ninety cents.

I do therefore adjudge, order, and decree, that the recaptors have, and recover, in full satisfaction for their salvage, the sum of four thousand six hundred and twenty-eight dollars, and twenty-two cents, to be apportioned amongst them as follows:[5]

The ship, charged with twelve hundred and sixty-two dollars, fifty cents; out of which, one thousand dollars to be deducted.

| | |
|---|---:|
| Mr. Dutilh's goods, seventeen hundred and sixty-two dollars, and seventy-five cents................... | $1762 75 |
| Mr. Gourjon's goods, sixteen hundred and two dollars, and ninety-seven cents ...................... | 1602 97 |
| Balance of ship, two hundred and sixty-two dollars, and fifty cents.. | 262 50 |
| | $3628 22 |

Which sum of three thousand six hundred and twenty-eight dollars, and twenty-two cents, is to be divided as follows, among the recaptors:

| | | |
|---|---:|---:|
| To Captain Brevoor, (balance of ship,) one hundred and fifty-seven dollars, and fifty cents......... | $ 157 50 | |
| To John Schier, (seaman) fifty-two dollars, and fifty cents ................ | 52 50 | |
| To Anthony Fachtman, (cook) fifty-two dollars, and fifty cents......... | 52 50 | $ 262 50 |
| To Capt. Brevoor, (Dutilh's goods,) one thousand and fifty-seven dollars, and sixty-five cents.......... | 1057 65 | |
| To John Schier, three hundred and fifty-two dolls. and fifty-five cents...... | 352 55 | |
| To Anthony Fachtman, three hundred and fifty-two dollars, and fifty-five cents .............. | 352 55 | 1762 75 |
| To Capt. Brevoor, (Gourjon's goods) nine hundred and sixty-one dollars, and seventy-nine cents...... | 961 79 | |
| To John Schier, three hundred and twenty dollars, and fifty-nine cents...... | 320 59 | |
| To Anthony Fachtman, three hundred and twenty dollars, and fifty-nine cents ................. | 320 59 | 1602 97 |
| | | $3628 22 |

So that Captain Brevoor is to receive in the whole, two thousand one hun-

---

[4] It has been frequently determined, in this court, that during the period of detention, either by captors, as prize, or belligerents, in amity, for adjudication, all the responsibilities of the officers and crew are suspended. But proof has been admitted, to shew either distinct acts of plunder, or embezzlement, by the crew, individually or in collusion with the possessors of the ship. The general principal of contribution, by all, has not been allowed, during the forcible detainer; but the frauds and malfeazance of individuals, have been permitted to be sett off, against their respective claims. In the case of The Blaireau, 2 Cranch [6 U. S.] 240, a claim of salvage, by the master, who had been guilty of embezzlement, was dismissed.

[5] See inter alia, the cases of The Aquila, 1 C. Rob. Adm. (Phil. Ed.) 32 &c. and that of The Two Friends, Id. 228, determined in 1798, (but not seen here, at the time of this, and some other decisions, in salvage cases,) in which there is a coincidence of opinion, upon the great points. As to the definition of derelict, there given from Sir Leotine Jenkyns, it creates no material difference. It means deserted; and not a voluntary abandonment, or derelict, entitling the occupant to the whole. The owner is entitled to the surplus, on paying salvage. If no owner to be found, after a time generally fixed, or at discretion thought reasonable, the vessel, or goods, found at sea deserted (on paying salvage), becomes a national droit; distributable, or devolving, in the whole, to the prince, lord high admiral, or otherwise, according to the peculiar political arrangement of the government of the country, into which they are brought.

dred and seventy-six dollars, and ninety-four cents................ 2176 94
John Schier, seven hundred and twenty-five dollars, and sixty-four cents 725 64
Anthony Fachtman, seven hundred and twenty-five dollars, and sixty-four cents..................... 725 64

$3628 22

And I do further adjudge, order, and decree, that the said ship Fair American, with her tackle, apparel, and furniture, (or so much thereof as may be necessary) be condemned, and that the same be sold by the marshal of this district, for the payment of the several recaptors aforesaid, of their respective proportions of the said two hundred and sixty-two dollars, fifty cents, the sum charged upon the ship. And I finally adjudge, order, and decree, that the respondents, Stephen Dutilh, and John Gourjon, pay to the said recaptors, the several sums of money, above charged upon the goods of them, the said Stephen Dutilh, and John Gourjon, respectively: all which are to be brought into court, to be distributed agreeably to this decree. The costs and charges to be paid by the respondents, in proportion to their respective interests.

NOTE [from original report]. On further consideration, I have not been satisfied with the quantum of salvage decreed. I should have been gratified if a superior court had reviewed and rectified what I now conceive to have been an error; but no appeal was entered. Brevoor and his associates should have had a reward at least as great as those usually receive who, without personal conflict and danger in combat, save property wrecked or deserted, or in peril of so being. Perhaps comparative merit would justify a more ample remuneration. In the latter cases, the ordinance of Louis XIV. has had influence with me, and due attention has been paid to the value of the property risked in the saving ship. I have, too, in all salvage cases regarded the amount in value of the reward, without scrupulously attending to any proportion it bore to the gross amount of the articles saved. I think there is weight in some of the reasoning of Azuni on this subject. Marit. Law Cas. 279, 280. Whether the merit of the salvors of the wrecked or abandoned vessels or goods should be diminished because the deserts of rescuers are personally greater seems not to me clear. This is a subject on which no fixed rules can be established; and it will, therefore, depend, in no small degree, on the mere opinions of those who decide. See Azuni, Mar. Law, pp. 279, 280, note (260), and authorities cited on this point. See 3 C. Rob. Adm. (Phil. Ed.) 288.

BREVOORT (HILLIARD v.). See Case No. 6,505.

EVIDENCE—TESTIMONY IN OTHER SUIT—ADMISSIBILITY.

B. brought a suit in equity in this court against C. and others, and in it took the deposition of one I., as a witness. B. then discontinued the suit, and afterwards brought another suit in equity against the same defendants, in this court, for the same cause of action. No proofs were taken in it by either party, and, after it had been set down for hearing, by the consent of both parties, the defendants applied for an order to permit them to read, as testimony, the deposition of I., so taken in the former suit. It was not shown that I. was dead, or that there was anything to prevent his being examined in the usual way: *Held*, that the application must be refused.

[Cited in The John H. Starin, Case No. 7,-351.]

